1

2

3

4                              UNITED STATES DISTRICT COURT

5                            NORTHERN DISTRICT OF CALIFORNIA

6

7    IAN MILLER,                                Case No. 23-cv-05711-JST

8                    Plaintiff,

9           v.                                  **ORDER DENYING MOTION TO
                                                DISMISS AND STRIKE**
10   NATURE'S PATH FOODS, INC.,
                                                Re: ECF Nos. 31, 32
11                   Defendant.

12

13          Before the Court is Nature's Path's motion to dismiss and motion to strike.  ECF Nos. 31,

14   32.  The Court will deny both motions.

15   **I.      BACKGROUND**

16          Nature's Path is a Canadian company that "manufactures, distributes, markets, advertises,

17   and sells a variety of breakfast and snack products under the brand names 'Nature's Path,'

18   'Envirokids,' 'Love Crunch,' and others."  ECF No. 1 ¶¶ 11, 17.  Plaintiff Ian Miller on multiple

19   occasions purchased Nature's Path's Heritage Flakes, Flax Plus Raisin Bran, Flax Plus Multibran

20   Flakes, and the Heritage Original Crunch cereals from retail stores in California.  *Id.* ¶ 60.  Miller

21   made his purchases after reading and relying on the products' front label claims that they

22   contained 5 grams of protein per serving.  *Id.* ¶ 61.  Miller claims these statements are misleading

23   because Nature's Path's products do not contain 5 grams of protein that the human body can

24   actually use.  *Id.* ¶ 2.

25          Miller's claims turn on the difference between protein quantity and protein quality.  Not all

26   proteins are the same in their ability to meet human nutritional requirements.  *Id.* ¶ 3.  Specifically,

27   not all proteins contain the nine amino acids essential to human protein synthesis and/or are not

28   fully digestible.  *Id.*

*United States District Court*
*Northern District of California*

The Protein Digestibility Corrected Amino Acid Score ("PDCAAS"), is the Food and Drug Administration's ("FDA") measure of protein quality and it accounts for both the amino acid profile and the digestibility of the protein. *Id.* ¶ 29 (quoting 21 C.F.R. § 101.9(c)(7)(ii)). Under this method, manufacturers determine the amount of essential amino acids that the food contains and then combine that with the protein's digestibility into an overall discount factor (score from 0.0-1.0) that represents the actual amount of protein the food provides nutritionally when multiplied by raw protein quantity. *Id.* ¶ 30. The regulations call this the "corrected amount of protein per serving." 21 C.F.R. § 101.9(c)(7)(i).

FDA regulations, and California's Sherman Food Drug & Cosmetic Law (the "Sherman Law"), do not always require manufacturers to include the corrected amount of protein per serving on their packaging. However, when a company chooses to make a protein claim such as "5 grams of protein per serving" outside of the Nutrition Facts Panel ("NFP") on its packaging, FDA regulations require it to include a statement of the corrected amount of protein per serving expressed as a Percent of Daily Value ("%DV"). 21 C.F.R § 101.9(c)(7)(i).

Nature's Path makes protein content claims on its products' packaging. For example, its Heritage Flakes cereal states it has "5 grams of protein per serving" on the front of the box. ECF No. 1 ¶¶ 2, 18. However, it does not include a corrected amount of protein per serving expressed as a %DV, in violation of FDA regulations and California's Sherman Law. *Id.* ¶ 19. Miller claims this omission is misleading because most consumers are unaware of the nutritional value of various protein sources. *Id.* ¶ 40. Thus, when consumers see a front-label quantitative protein claim, they believe that all of the advertised protein will be nutritionally available. *Id.* If, however, Nature's Path provided the corrected amount of protein as a %DV, consumers, such as Miller, would be alerted to the fact that its products provide a significantly lower amount of the daily value of protein than higher quality protein products. *Id.* If the %DV had been included on the products, Miller alleges he would not have purchased them or would have paid less for them. *Id.* ¶ 61.

Miller brought this class action against Nature's Path for violations of: (1) California's Consumers Legal Remedies Act ("CLRA"); (2) California's False Advertising Law ("FAL");

1    (3) common law fraud, deceit and/or misrepresentation; (4) California's Unfair Competition Law

2    ("UCL"); and (5) unjust enrichment.  ECF No. 1.  Nature's Path then filed this motion to dismiss

3    and motion to strike the nationwide class.  ECF Nos. 31, 32.

4    **II.      JURISDICTION**

5         The Court has jurisdiction under 28 U.S.C. § 1332.

6    **III.     LEGAL STANDARD**

7         **A.      Rule 12(b)(6)**

8         A complaint must contain "a short and plain statement of the claim showing that the

9    pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Dismissal under Rule 12(b)(6) is

10   appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support

11   a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th

12   Cir. 2008).  A complaint need not contain detailed factual allegations, but facts pleaded by a

13   plaintiff "must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v.*

14   *Twombly*, 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss, a complaint must contain

15   sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

16   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted).  "A claim has

17   facial plausibility when the plaintiff pleads factual content that allows the court to draw the

18   reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The Court must

19   "accept all factual allegations in the complaint as true and construe the pleadings in the light most

20   favorable to the nonmoving party."  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

21   However, the Court is not "required to accept as true allegations that are merely conclusory,

22   unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536

23   F.3d 1049, 1055 (9th Cir. 2008) (quotation marks and citation omitted).

24        **B.      Rule 12(b)(2)**

25        When a defendant objects to the Court's personal jurisdiction over it pursuant to Federal

26   Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of establishing that jurisdiction is

27   proper."  *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  Absent an evidentiary

28   hearing, however, the plaintiff need only make a prima facie showing of personal jurisdiction.  *Id.*

United States District Court
Northern District of California

3

1  "Uncontroverted allegations in the plaintiff's complaint must be taken as true", and "[c]onflicts

2  between the parties over statements contained in affidavits must be resolved in the plaintiff's

3  favor." *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir.

4  2004)). "Where, as here, there is no applicable federal statute governing personal jurisdiction, the

5  district court applies the law of the state in which the district court sits." *Schwarzenegger*, 374

6  F.3d at 800. "Because California's long-arm jurisdictional statute is coextensive with federal due

7  process requirements, the jurisdictional analyses under state law and federal due process are the

8  same." *Id.* at 800–01.

9        **C.**    **Rule 12(f)**

10        Under Rule 12(f) of the Federal Rules of Civil Procedure, the Court "may strike from a

11  pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

12  "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must

13  arise from litigating spurious issues by dispensing with those issues prior to trial." *Clancy v.*

14  *Bromley Tea Co.*, 308 F.R.D. 564, 568 (N.D. Cal. 2013) (quoting *Whittlestone, Inc. v. Handi-Craft*

15  *Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).

16  **IV.**    **DISCUSSION**

17        **A.**    **Personal Jurisdiction**

18        "Personal jurisdiction must exist for each claim asserted against a defendant." *Action*

19  *Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (citation omitted).

20  Courts "have recognized two types of personal jurisdiction: 'general' (sometimes called 'all-

21  purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers*

22  *Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017) (citation omitted).

23        Nature's Path argues this Court lacks personal jurisdiction over the claims of unnamed

24  class members who purchased products outside of California. ECF No. 31 at 14–16. Miller,

25  however, contends that the Court may exercise both general jurisdiction and specific jurisdiction

26  over these claims. ECF No. 36 at 10–13.

27            **1.**    **General Jurisdiction**

28        "A court with general jurisdiction may hear any claim against that defendant, even if all the

incidents underlying the claim occurred in a different State." *Bristol-Myers*, 582 U.S. at 262 (emphasis and citation omitted).  General jurisdiction arises "when [the defendant's] affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 919 (2011). Although general jurisdiction might be found elsewhere in an "exceptional case," a corporation is usually "at home" only in its place of incorporation and its principal place of business.  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358–59 (2021).

Nature's Path is a Canadian company with its principal place of business in Richmond, British Columbia.  ECF No. 1 ¶ 11.  Miller, however, relying on the Supreme Court's decision in *Mallory v. Norfolk Southern Railway Company*, 600 U.S. 122 (2023), argues Nature's Path is subject to general jurisdiction in California because it has appointed an agent to receive service of process here.  ECF No. 36 at 12.  Miller misreads *Mallory*.  In *Mallory*, the Supreme Court reaffirmed the constitutionality of state laws that require out-of-state corporations to consent to general personal jurisdiction as a condition of doing business with the state.  *Mallory*, 600 U.S. at 127, 146.  Thus, Norfolk Southern, a Virginian company, could be sued in Pennsylvania by an out-of-state plaintiff arising from out-of-state acts "because it had agreed to accept service of process in [Pennsylvania] on any suit as a condition of doing business there."  *Id.* at 133.  The relevant Pennsylvania law required out-of-state companies that registered to do business in the state consent to general personal jurisdiction.  *Id.* at 127.  California, by contrast, has no such requirement.  *AM Tr. v. UBS AG*, 681 Fed. App'x 587, 588–89 (9th Cir. 2017) ("California does not require corporations to consent to general personal jurisdiction in that state when they designate an agent for service of process or register to do business.")  Accordingly, Nature's Path has not consented to, and is not subject to, general personal jurisdiction in California.  *See Rosenwald v. Kimberly Clark Corp.*, 22-cv-04993-LB, 2023 WL 5211625, at *6 (N.D. Cal. Aug. 14, 2023).

## 2.    Specific Jurisdiction

Specific jurisdiction arises when a defendant's contacts with the forum give rise to the claim in question.  *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).  "In other words, there

1   must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity

2   or an occurrence that takes place in the forum State and is therefore subject to the State's

3   regulation.'"  *Bristol-Myers,* 582 U.S. at 262 (quoting *Goodyear*, 564 U.S. at 919).

4          The parties do not dispute the Court has jurisdiction over Miller's claims, the named

5   California Plaintiff, or those of the unnamed California class members.   ECF No. 31 at 14.

6   However, the parties dispute whether the Court may exercise specific jurisdiction over the out-of-

7   state, unnamed plaintiffs' claims in light of the Supreme Court's decision in *Bristol-Myers*.  *Id.* at

8   14–16; ECF No. 36 at 10–13.  *Bristol-Myers* was a mass tort action brought in California state

9   court, alleging that Bristol-Myers' drug, Plavix, damaged plaintiffs' health.  *Bristol-Myers,* 582

10  U.S. at 259.  The Supreme Court found that California courts could not exercise specific

11  jurisdiction over the out-of-state plaintiffs' claims because the claims did not arise in California or

12  out of the company's activities there.  *Id.* at 265.  Specific jurisdiction, the Court explained,

13  requires an "affiliation between the forum and the underlying controversy, principally an activity

14  or an occurrence that takes place in the forum State."  *Id.* at 262 (quoting *Goodyear*, 564 U.S. at

15  919).  The Supreme Court left open "whether the Fifth Amendment imposes the same restrictions

16  on the exercise of personal jurisdiction by a federal court."  *Id.* at 269.

17          Although the Ninth Circuit has not addressed the issue, it has found that motions to dismiss

18  unnamed plaintiffs for lack of personal jurisdiction, prior to class certification, are premature.

19  *Moser v. Benfytt, Inc.*, 8 F.4th 872, 878 (9th Cir. 2021).  This is "because putative class members

20  'are *always* treated as nonparties' and 'become parties to an action – and thus subject to dismissal

21  – only after class certification.'"  *Id.* (quoting *Molock v. Whole Foods Mkt. Grp.*, 952 F.3d 293

22  (D.C. Cir. 2020) (emphasis in original)).  Accordingly, Nature's Path's motion to strike the

23  nationwide class for lack of personal jurisdiction is denied as premature.

24          **B.      Article III Standing**

25          Article III of the U.S. Constitution authorizes the judiciary to hear "cases" and

26  "controversies."  To establish standing a "plaintiff must have (1) suffered an injury in fact, (2) that

27  is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed

28  by a favorable decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  A "quintessential

1    injury-in-fact" occurs when the "plaintiffs spent money that, absent defendants' actions they

2    would not have spent." *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011).

3         Nature's Path argues that Miller has failed to establish an injury-in-fact.  ECF No. 32 at 27.

4    Relying on *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), it contends that because Miller "is

5    merely seeking to ensure a defendant's 'compliance with regulatory law'" he has failed to

6    establish a concrete injury-in-fact.  *Id.* (quoting *TransUnion LLC*, 594 U.S. at 427).  Unlike the

7    plaintiffs in *TransUnion*, however, Miller has pleaded a particularized allegation of harm:  he

8    spent money on Nature's Path's products that, absent their omissions, he otherwise would not

9    have spent.  ECF No. 1 ¶ 62 ("had Defendant adequately disclosed the corrected amount of protein

10   per serving for each Product expressed as a %DV, as FDA regulations require, Plaintiff Miller

11   would not have purchased the Products or would have, at minimum, paid less for them.")  This is a

12   concrete injury sufficient to confer standing.  *See Maya*, 658 F.3d at 1069 (plaintiffs' allegations

13   that "they would not have purchased their homes had defendants made the disclosures allegedly

14   required by law" constituted "actual and concrete economic injuries."); *see also TransUnion*, 594

15   U.S. at 425 (monetary harms "readily qualify as concrete injuries under Article III.")

16        Nature's Path also argues that Miller lacks standing to obtain an injunction because he is

17   now aware of the labelling deficiencies and is thus unlikely to be deceived by them again.  ECF

18   No. 32 at 27–29.  In addition, it claims Miller fails to plausibly allege a desire to purchase their

19   products in the future.  *Id.*  These arguments ignore well-settled law.  The Ninth Circuit has

20   recognized that a "previously deceived consumer may have standing to seek an injunction against

21   false advertising or labeling, even though the consumer now knows or suspects that the advertising

22   was false." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018).  This is

23   because "[k]nowledge that the advertisement or label was false in the past does not equate to

24   knowledge that it will remain false in the future" and "the threat of future harm may be the

25   consumer's plausible allegations that she will be unable to rely on the product's advertising or

26   labeling in the future, and so will not purchase the products although she would like to." *Id.* at

27   969–70.  This is what Miller alleges here.  ECF No. 1 ¶ 64 ("Miller continues to desire to purchase

28   protein products, including those marketed and sold by Defendant [but] . . . will be unable to rely

United States District Court
Northern District of California

7

1    on Defendant's labels when shopping for protein products in the future").

2        Finally, Nature's Path argues Miller lacks standing to sue for products he didn't purchase.

3    ECF No. 32 at 26–27.  As this Court has previously explained, "analyzing the 'sufficient

4    similarity' of the products is not a standing inquiry, but rather an early analysis of the typicality,

5    adequacy, and commonality requirements of Rule 23."  *Clancy v. Bromley Tea Co*., 308 F.R.D.

6    564, 571 (N.D. Cal. 2013); *see also Moore v. EO Prods., LLC*, No. 22-cv-07618, 2023 WL

7    6391480, at *4 (N.D. Cal. Sept. 29, 2023) ("After *Melendres*, this Court and others in this district

8    have applied the class certification approach to whether class representatives may represent a class

9    of individuals who purchased different products from the class representatives.")  Accordingly, "it

10   is premature to consider [Miller's] ability to represent a class who purchased different products

11   than he did."  *Dailey v. A&W Concentrate Co.*, 519 F. Supp. 3d 668, 672 (N.D. Cal. 2021) (citing

12   *Clancy*, 308 F.R.D. at 569–71).

13       **C.    Preemption**

14       The Supremacy Clause of the Constitution enables Congress to enact legislation that

15   preempts state law.  *See Gibbons v. Ogden*, 22 U.S. 1, 211 (1824).  "Federal preemption occurs

16   when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually

17   conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is

18   reasonable to conclude that Congress left no room for state regulation in that field."  *Chae v. SLM*

19   *Corp*., 593 F.3d 936, 941 (9th Cir. 2010) (citation omitted).

20       **1.    Express Preemption**

21       "To avoid a patchwork quilt of conflicting state labeling laws, the [Food, Drug, and

22   Cosmetic Act ("FDCA")] includes a preemption provision that establishes a national and uniform

23   standard for certain labeling statements."  *Greenberg v. Target Corp.*, 985 F.3d 650, 655 (9th Cir.

24   2021).  The FDCA preempts only those state law claims that impose requirements "not identical

25   to" its own.  *Id.*  Congress, thus, limited preemption to state laws that "impose more or

26   inconsistent burdens on manufacturers than the burdens imposed by the FDCA."  *Krommenhock v.*

27   *Post Foods, LLC*, 255 F. Supp. 3d 938, 951 (N.D. Cal. 2017) (quoting *Gallagher v. Bayer AG*, No.

28   14-cv-04601-WHO, 2015 WL 1056480, at *4 (N.D. Cal. Mar. 10, 2015)).

United States District Court
Northern District of California

1    Nature's Path argues Miller's challenges to their front label protein claims are preempted

2    because "FDA regulations specifically permit the total amount of protein by weight in grams in

3    food products to be calculated based on the nitrogen method."  ECF No. 32 at 20–22 (citing 21

4    C.F.R. § 101.9(c)(7)).  Accordingly, Nature's Path reasons that Miller, through this suit, seeks to

5    impose labeling requirements that are not identical to the requirements of the FDCA, and are

6    therefore preempted.  *Id.* at 22.  Nature's Path is correct that FDA regulations permit

7    manufacturers to make protein claims based on the nitrogen method.  21 C.F.R. §§ 101.13(o),

8    101.9(c)(7).  As such, courts "routinely find expressly preempted standalone claims that

9    representations of protein content using the nitrogen method are misleading."  *Guerra v. KIND,*

10   *LLC,* No. 22-cv-06654-RS, 2023 WL 3436093, at *6 (N.D. Cal. May 11, 2023).

11   But Miller's claims do not rest on the theory that Nature's Path's "representations of

12   protein content using the nitrogen method are misleading" on their own.  *Id.*  Rather, Miller relies

13   on 21 C.F.R. section 101.9(c)(7)(i), which "requires the manufacturer to display PDCAAS-

14   corrected protein content as a percent daily value figure within the NFP" when the label includes

15   such a protein claim.  *Nacarino v. Kashi Co.*, 77 F.4th 1201, 1205 (9th Cir. 2023).  Miller alleges

16   that Nature's Path's protein content claims are misleading since they do not include the quality-

17   adjusted percentage, as required under 21 C.F.R. section 101.9(c)(7)(i).  This claim is not

18   expressly preempted because it is based on an alleged violation of FDA regulations and therefore

19   "requires nothing more or less than what the FDCA already requires."  *Guerra*, 2023 WL

20   3436093, at *7.

21                    **2.    Implied Preemption**

22   Even if a state law is not expressly preempted by the FDCA it may still be impliedly

23   preempted if it conflicts with the FDCA's provisions.  *Buckman Co. v. Plaintiffs' Legal Comm.*,

24   531 U.S. 341, 348 (2001).  There is no private right of action under the FDCA.  *Perez v. Nidek*

25   *Co., Ltd.*, 711 F.3d 1109, 1119 (9th Cir. 2013).  Rather, "[t]he FDA is responsible for investigating

26   potential violations of the FDCA."  *Id.*  Thus, state claims that "exist solely by virtue of the

27   FDCA . . . requirements," *Buckman,* 531 U.S. at 348*,* are impliedly preempted as they "conflict[]

28   with the FDCA's enforcement scheme," which entrusts enforcement to the FDA.  *Perez*, 711 F.3d

United States District Court
Northern District of California

at 1119.

Nature's Path argues Miller's state law claims are impliedly preempted under *Buckman* as an impermissible attempt to privately enforce the FDCA and its regulations.  ECF No. 32 at 19.  In *Buckman*, patients who suffered injuries from bone screws brought "state-law causes of action claiming that [defendants] made fraudulent representations to the FDA as to the intended use of the bone screws and that, as a result, the devices were improperly given market clearance and were subsequently used to the plaintiffs' detriment."  *Buckman*, 531 U.S. at 346–47.  The Supreme Court held that such "[s]tate-law fraud on the FDA claims conflict[ed] with the FDA's responsibility to police fraud consistently with the Administration's judgment and objectives."  *Id.* at 350.  Such claims, which "exist solely by virtue of the FDCA disclosure requirements" are preempted.  *Id.* at 353.

However, as recognized by the Ninth Circuit, "*Buckman* . . . left the door open to state-law claims 'parallel' to federal requirements."  *McClellan v. I-Flow Corp.*, 776 F.3d 1035, 1040 (9th Cir. 2015).  To avoid preemption, "[t]he plaintiff must be suing for conduct that violates the FDCA (or else his claim is expressly preempted []) but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*)."  *Perez*, 711 F.3d at 1120 (citation omitted) (emphasis in original).  Miller's claims satisfy these requirements.  Miller brings his claims under California's Sherman Law, which imposes requirements identical to those in the FDCA.  *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 954 (N.D. Cal. 2013) (finding that "through the Sherman Law, California has expressly adopted the federal labeling requirements as its own").  As this Court has explained, the Sherman Law "exists independently . . . and violating its requirements would be a valid state cause of action even if the [FDCA] ceased to exist."  *Clancy v. Bromley Tea Co.*, 308 F.R.D. 564, 574 (N.D. Cal. 2013).  Unlike in *Buckman*, where the plaintiffs' claims depended on federal law, Miller's claims do "not depend on the [FDCA], except in the sense that the Sherman Law mirrors the requirements of the FDCA."  *Id.*  Accordingly, his state law claims are not impliedly preempted.  *Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 845 (9th Cir. 2024) ("federal law does not preempt private enforcement of the Sherman Law's labeling requirements").

1

2

### D.    Consumer Protection Claims

#### 1.    Reasonable Consumer Test

Under California's UCL, FAL, and CLRA, "claims based on deceptive or misleading marketing must demonstrate that a 'reasonable consumer' is likely to be misled by the representation." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021) (citing *Ebner v. Fresh Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)).  "This standard is higher than a 'mere possibility' that the statement at issue 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Amin v. Subway Rests., Inc.*, No. 21-cv-00498-JST, 2022 WL 20184652, at *3 (N.D. Cal. July 7, 2022) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)).  "Rather, the standard requires a likelihood 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (quoting *Lavie*, 105 Cal. App. 4th at 508).  "[A] plaintiff's unreasonable assumptions about a product's label will not suffice." *Moore*, 4 F.4th at 882 (citing *Becerra v. Dr. Pepper/Seven Up., Inc.*, 945 F.3d 1225, 1229–30 (9th Cir. 2019)).  "California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  Thus, it is a "rare situation" when "granting a motion to dismiss is appropriate." *Id.* at 939.

Nature's Path argues this is one of those rare cases where dismissal is warranted because no reasonable consumer would interpret the protein claims to "represent anything other than the total amount of protein in the product per serving" given the rest of the packaging.  ECF No. 32 at 24.  Specifically, Nature's Path points to the description on their Heritage Flakes cereal which states it is "A Delicious Blend of Kamut Khorasan, Wheat, Oats, Spelt, Millet & Quinoa." *Id.* Nature's Path argues that because plant-based proteins like wheat and oats are "incomplete" proteins, a reasonable consumer would know that not all of the protein from the product could be absorbed and used by humans.  *Id.*

At this stage the Court must accept all of Miller's factual allegations as true and draw all reasonable inferences in his favor.  It is not clear, as Nature's Path suggests, that most consumers are aware of the usability of various proteins such that stating the product is made of wheats and

oats would alert them to the fact not all the protein is usable.  Rather, as another court in this district explained, "when a manufacturer emphasizes a product's protein content" on its packaging, "the manufacturer is implicitly suggesting that the product is a good source of protein" and "that statement is misleading without including information about the product's protein quality on the nutrition facts panel." *Rausch v. Flatout, Inc.*, 660 F. Supp. 3d 855, 860 (N.D. Cal. 2023).  Accordingly, the Court finds Miller has plausibly alleged Nature's Path's labels could deceive a reasonable consumer.  *See Rausch*, 660 F. Supp. 3d at 863; *see also Lesh v. DS Naturals, LLC*, 22-cv-01036-HSG, 2023 WL 2530986, at *5 (N.D. Cal. Mar. 15, 2023).

### 2.    Reliance

To have standing under the UCL, FAL, and CLRA, a plaintiff must have "'actually relied' on whatever defect in a product label allegedly makes it actionable when making [their] decision to buy the product." *Shaeffer v. Califa Farms, LLC*, 44 Cal. App. 5th 1125, 1143 (2020) (quoting *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 317, 326–27 (2011)).  To satisfy this requirement, plaintiffs must allege that they "would not have bought the product but for the allegedly actionable misrepresentation or omission." *Id.* (quotation marks and citation omitted).

Miller alleges that he purchased the products "after reading and relying on" the front label protein claims.  ECF No. 1 ¶ 61.  He alleges he "believed the truth of each representation, i.e., that the product would actually provide the full amount of protein claimed on the front labels in a form a human could utilize" and that had Nature's Path "not made the protein claims on the front of its packages, he would not have been drawn to the Products and would not have purchased them." *Id.* ¶¶ 61, 62.  He further alleges that he "looked at and read the NFP on the Heritage Flakes cereal before purchasing them for the first time" and that he would have not purchased them, or paid less, had the %DV been disclosed. *Id.* ¶¶ 62, 63.

Nature's Path contends these allegations are not plausible, arguing that if a consumer was genuinely concerned about the %DV "they would not buy products that did not have that information listed."  ECF No. 32 at 25.  While this is one possible inference, it is not the only plausible one, and at this stage the Court must draw all reasonable inferences in Miller's favor. *See Singh v. Google LLC*, No. 16-cv-03734-BLF, 2018 WL 984854, at * 6 (N.D. Cal. Feb. 20,

1  2018) (whether reliance was justified in a particular circumstance "may be decided as a matter of

2  law if reasonable minds can come to only one conclusion based on the facts").  While Miller

3  alleges protein content is something he considers when making food purchases, he doesn't allege

4  he is an expert on the matter or that he has detailed knowledge of NFP labeling requirements.  It's

5  plausible that Miller was drawn to the products based on their protein claims and assumed,

6  incorrectly, that all of their stated protein amounts were usable.  Accordingly, the Court finds

7  Miller has adequately alleged reliance.

8        **E.**        **Equitable Claims**

9         Under "traditional principles governing equitable remedies in federal courts," a plaintiff

10  "must establish that she lacks an adequate remedy at law before securing equitable" relief.  *Sonner*

11  *v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).

12         Nature's Path argues that Miller's equitable claims must be dismissed under *Sonner*

13  because he fails to demonstrate that he "lacks an adequate remedy at law."  ECF No. 32 at 30.

14  However, "[t]his Court, together with the majority of courts in this district, understands *Sonner* to

15  require far less at the pleading stage."  *In re Natera Prenatal Testing Litig.*, 664 F. Supp. 3d 995,

16  1012 (N.D. Cal. 2023).  At the pleading stage it is sufficient for a "plaintiff to plead that her legal

17  remedies are inadequate or plead equitable claims in the alternative because her legal remedies are

18  inadequate."  *Brown v. Van's Int'l Foods, Inc.*, No. 22-cv-00001-WHO, 2022 WL 1471454, at *13

19  (N.D. Cal. May 10, 2022).  This is what Miller has alleged here.  ECF No. 1 ¶¶ 113–115.

20  Accordingly, the Court declines to dismiss his equitable claims.

21        **F.**        **Unjust Enrichment**

22         Nature's Path also contends that Miller's unjust enrichment claim must be dismissed

23  because unjust enrichment is not an independent cause of action in California.  ECF No. 32 at 30–

24  31.  While California case law on this issue could be clearer,[1] the Ninth Circuit "has construed the

---

[1] "There is no cause of action in California labeled 'unjust enrichment.'"  *City of Oakland v. Oakland Raiders*, 83 Cal. App. 5th 458, 477 (2022) (citation omitted).  "But '[c]ommon law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient; a typical cause of action involving such remedy is 'quasi-contract.'"  *Id.* (quoting *Munoz v. MacMillan*, 195 Cal. App. 4th 648, 661 (2011)).  *See also Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 998, 353 P.3d 319, 326 (2015) ("An individual who

United States District Court
Northern District of California

1   common law to allow an unjust enrichment cause of action through quasi-contract." *ESG Capital*

2   *Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) (citing *Astiana v. Hain Celestial*

3   *Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)). "[Nature's Path] is therefore incorrect that the

4   unjust enrichment claim should be dismissed solely on the ground that no such claim is cognizable

5   under California law." *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1120

6   (N.D. Cal. 2021) (quotation marks and citation omitted).

7        **G.**     **Motion to Strike Class Claims**

8        "[A] motion to strike class claims based only on the pleadings is proper only if the court 'is

9   convinced that any questions of law are clear and not in dispute, and that under no set of

10  circumstances could the claim or defense succeed.'" *Parducci v. Overland Sols., Inc.*, 399 F.

11  Supp. 3d 969, 976 (N.D. Cal. 2019) (quoting *In re iPad Unlimited Data Plan Litig.*, No. 10-cv-

12  2553-RMW, 2012 WL 2428248, at *2 (N.D. Cal. June 26, 2012)).

13       Nature's Path asks the Court to strike Miller's national class allegations because Miller

14  lacks standing to bring claims under the laws of states in which he does not reside and was not

15  injured.  ECF No. 31 at 16–17.  This Court has previously found that determinations of nationwide

16  class standing should be deferred until class certification. *See e.g. In re Natera*, 664 F. Supp. 3d at

17  1013–14.  In *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015), the Ninth Circuit adopted the

18  "class certification approach" to such standing issues, holding "that once the named plaintiff

19  demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the

20  court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been

21  met."  784 F.3d at 1261–62.  "Although *Melendres* 'involved a dissimilarity in injuries suffered,'

22  while this case involves named plaintiffs bringing legal claims pursuant to state laws for states

23  they did not reside in, 'the distinction is not material for purposes of taking the class certification

24  approach.'" *Hrapoff v. Hisamitsu Am., Inc.*, No. 21-cv-01943-JST, 2022 WL 2168076, at *2

25

26  _____

27  has been unjustly enriched at the expense of another may be required to make restitution.  Where the doctrine applies, the law implies a restitutionary obligation, even if no contract between the parties itself expresses or implies such a duty.  Though this restitutionary obligation is often

28  described as quasi-contractual, a privity of relationship between the parties is not necessarily required." (citations omitted)).

United States District Court
Northern District of California

1   (N.D. Cal. June 16, 2022) (quoting *Pecanha v. Hain Celestial Grp., Inc.*, No. 17-cv-04517-EMC,

2   2018 WL 534299, at *9 (N.D. Cal. Jan. 24, 2018)).

3        Nature's Path also asks the Court to strike the national class allegations because under

4   *Mazza v. American Hondo Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012), California law cannot

5   apply to the nationwide claims.  ECF No. 31 at 18.  This Court has found that "[s]uch a detailed

6   choice-of-law analysis is not appropriate at this stage of the litigation" but "[r]ather, such a fact-

7   heavy inquiry should occur during the class certification stage, after discovery."  *Clancy v.*

8   *Bromley Tea Co.*, 308 F.R.D. 564, 572 (N.D. Cal. 2013).  While *Mazza* "will be relevant to the

9   decision whether to certify any proposed class or sub-class . . . at this early stage of the litigation,

10  'it would be premature to speculate about whether the difference in various states' consumer

11  protection laws are material in this case."  *Id.* (quoting *Forcellati v. Hyland's, Inc.*, 876 F. Supp.

12  2d 1155, 1159 (C.D. Cal. 2012)).  Accordingly, the Court declines to strike Miller's nationwide

13  class allegations.

14                                  **CONCLUSION**

15       For the foregoing reasons the Court denies Nature's Path's motion to dismiss and motion

16  to strike.

17       **IT IS SO ORDERED.**

18  Dated:  September 11, 2024

19  

20                                  JON S. TIGAR
                                    United States District Judge

21

22

23

24

25

26

27

28